Good morning, your honors. I'd like to reserve three minutes, if I may. We've been knocking at the gates of the federal courts to try to get our federal rights vindicated in federal court. It does seem you have, and you've been turned down so many times. What's new about this case? We're getting it right. What's new about this case that hasn't already, by Ninth Circuit law, ruled against you, which is binding on this panel? We learn from our mistakes. Let me tell you what we've done in this case. Number one, we have solved the Williamson problem of ripeness because we have now under our belt the Ventura Ninth Circuit decision, which squarely holds that you don't need to ripen and correctly holds that you don't need to ripen a substantial advancement claim. And that always has been and always should have been clearly the law of the circuit. But then you've run into the fact that there's a statute of limitations on it. We solved that one, though, too, in Hacienda v. Morgan Hill. In the Hacienda decision, the Court indicated that there is such a thing as an as-applied substantial advancement claim. Many courts had previously, erroneously, I believe, assumed the Laval and certain other cases by saying that they were addressing a facial claim, were saying that there were exclusively facial claims, that these were all per se facial claims. Every substantial advancement case had to be a per se facial claim. And Hacienda makes it clear that the law of the circuit is not that, that the law of the circuit is that you can assert an as-applied substantial advancement claim. You still have to exhaust your remedy and go through the state process. Well, you see, now we get back to Williamson, don't we? Williamson is not an exhaustion doctrine. Williamson is a ripeness doctrine. And it's interesting. Last evening I was rereading the oral argument in the San Remo case that's before the U.S. Supreme Court right now. And a fair amount of oral argument is a back and forth between the justices and the attorneys who argued it about whether Williamson ought to be revisited or reconsidered. And, in fact, the great irony is when I appeared before this very court to argue the Ventura case, Ventura Mobile Home Park owner's case cited in our briefs, I asked a question, give us a road map. Tell us how we can get possibly into federal courts. How we can get our federal claim. It can't possibly be the law that you can't have a federal takings claim. And, by the way, let's remember the takings clause, the Fifth Amendment, was the very first one of the enumerated bills of rights that were extended where the federal courts extended protection through the Fourteenth Amendment. I think it was in the Chicago Railroad case, a U.S. Supreme Court decision. So this is not a minor right, the right to ---- Well, I don't think anybody is suggesting it's a minor right, counsel. I'm just trying to find out what's new here because, you know, having been involved in the case and acknowledged that there's some serious questions, nonetheless, the law of the circuit is you go through the Kavanaugh-Galland process, why are you not, you know, what does Hacienda do to get you out from under that? Well, it does. Hacienda, again, Hacienda teaches us that there is such a thing as an as-applied. Right. Takings case. Right. Okay? And Ventura. And then what about the remedy? The remedy is to have the ordinance invalidated. That's the other issue. As-based? Or as-applied? As-applied. As-applied does. Okay. That's the only remedy you can possibly have in a substantial advancement claim. If you were to have any other, certainly just compensation can't be a remedy. All the just compensation in the world, all the money in the world, isn't going to solve a problem that's created because an ordinance fails to substantially advance a legitimate governmental purpose and the city has no business trying to take your property from you, even if it's paying you all the money in the world. Okay. Now, when was this? So your argument is that how do you get around the statute of limitations? I'm not sure I characterized it as getting around the statute of limitations. But, again, the Hacienda case does make it clear that you can go through an administrative process, and after you go through that administrative process, you can then come to court and you can say, guess what? We've now been through the process. We've had the ordinance applied to us, and the ordinance, as applied to us, fails to substantially advance a legitimate governmental purpose. And in this case, the reason it fails to substantially advance a legitimate governmental purpose is because, A, it fails to contain a mechanism designed to prevent the creation of a premium. Remember, now, we have these home, these pieces of tin, basically, selling for I think the premium in the Vista de Santa Barbara case was $30,000 over and above their Blue Book value. And I'm not sure what the, where in the record, but it was certainly many tens of thousands of dollars in the situation of Stardust. So, absolutely, these premiums exist. They're being transferred. There is an identifiable property right, a leasehold premium that's being transferred here, and we're entitled to come to federal court and seek relief in federal court. I'm not sure. I kind of got off your question. Could you remind me where you were, Judge? Well, I was just trying to walk you through to find out what's new here. So you're saying now that because, as a facial claim, the facial claim would invoke the statute, an ordinance, when it was first? One year at the time these cases were decided, and now two years, because we now have a new personal injury statute here in California. So as applied to you, your argument is that's the only time you could accrue your cause of action to it? Well, actually. On an as-applied basis. Actually, in the Vista de Santa Barbara case, we also argue that under the Travis decision and under certain other recent California decisions, the law in California is that the statute doesn't start to run on these kinds of claims until such time as you've suffered some appreciable injury and until such time as it manifests itself. In other words, until such time as you discover it. The problem with any other interpretation that might be advanced by the Ninth Circuit, if the Ninth Circuit merely adopts the two-year statute and then adopts a blanket rule that we need two years from adoption of the ordinance, as opposed to two years from the date you suffer injury, is you have the ironic circumstance, or the impossible circumstance, of being required to file a lawsuit before you have a claim. Because you file a lawsuit, and the defense is, well, you don't have a claim because there's no evidence of any premium existing. So you're out of court on that. Two years goes by. Now your claim arises. Now you file your case. And what? You're out of court now because you're beyond the statute of limitations. That can't be the law. At least I certainly would hope that the Ninth Circuit would not consider that to be the law. I would also hope that this Court would finally, that someone would address the question, how are we to vindicate our Federal constitutional rights respecting the takings clause in Federal court? You're going to hear the city stand up, and they're going to argue about issue preclusion. Well, actually, they won't argue issue preclusion in this case. That's the next step. Well, one way, counsel, that you can do it, of course, is by pursuing your remedies through State court and then appealing to the U.S. Supreme Court. That's not an — Your question is, how do we get to Federal court without having to go through the State courts? Well, also, of course, access to the Federal courts through writ of certiorari is really no remedy at all, because we're entitled to, with respect to our takings claims, we're entitled to have a trial. We're entitled to have all the Federal issues determined and all the Federal claims determined. And certainly this Court doesn't want to relegate all of that to a State court to decide. That can't be the law either. Until you get in, if you go through the process and then find that you don't have an adequate State remedy, then you can get to Federal court, right? I see. So now we determine that a Kavanaugh adjustment, for example, the State courts tell us what? They tell you — they teach a couple of things very clearly. Number one, that if you posit a claim in State court that sounds in regulatory takings, but it could be construed as a substantive due process claim, then the teachings of Kavanaugh and Santa Monica Beach and other cases are that the California Supreme Court says we're going to treat those as substantive due process claims, and we're going to give a much more deferential standard. On the other hand, of course, the Federal standard under Armendariz is precisely the opposite. The Federal standard is that if something can be construed either as a substantive due process or a takings claim, that you have to give it a takings claim analysis. Also, remember, the California courts tell us that what are they going to give us for relief? What they're going to give us is a new hearing under the Kavanaugh case. They're going to give us a new hearing before what? Before the same administrative agency that has deprived us of our constitutional rights. We're supposed to go back and get a rent increase to make up for the constitutional infirmity of the ordinance. Again, the ordinance needs to be declared unconstitutional because it fails to substantially advance a legitimate governmental purpose. All of the dollars in the world won't solve the problem. Furthermore, as Justice O'Scanlan observed in one of the cases cited, the whole issue of the ‑‑ I'm trying to think of what he did observe. He observed that, oh, he observed that it was very suspect to conclude that a remedy which says that the future tenants are going to pay the ‑‑ for the damages that the government caused you to sustain by denying you, by having an ordinance that fails to substantially advance a legitimate governmental purpose or that constitutes a taking, that that remedy is no remedy at all. I mean, it's a constitutionally suspect remedy. So I think the notion of telling us that the only way that we can possibly have a federal court decide any of these takings claims is to go through the U.S. ‑‑ the state court system all the way to the California Supreme Court, and then take a, what, a one‑half of 1% shot at a writ of certiorari being granted in the U.S. Supreme Court. I don't think that's any real remedy at all. What other federal constitutional right requires you to do that? None. It's only because of this Williamson conundrum that we're in that we're faced with that issue here as property rights owners. I see I only have two minutes left, so I'm going to reserve it unless you have any other questions. Thank you. Thank you. Good morning, honors. It's Henry Heater. I represent the city of San Buenaventura, and it's the Rent Review Board. Actually, I'd like to begin by answering Mr. Colvin's last question. What other federal constitutional right has to be litigated in state court? Now, buddy, this court is probably familiar with the Anti-Tax Injunction Act, where if you claim the imposition of a state tax is unconstitutional, nonetheless you cannot bring that action in state federal court. You have to litigate that action in state court where the state provides you an adequate procedural remedy. Not unlike what Williamson County says involves issues of comity. This is what Williamson County says is where you have an adequate state procedural remedy, you exercise that procedural remedy, and you don't have a federal claim unless you're denied on the merits damages for a regulatory taking in this case, compensation. That doesn't mean you lose on the merits of your taking claim. That means, as in the old pre-First English days where you could win, you could prove a regulatory taking, but the California courts would only give you invalidation. It wouldn't give you money damages. Now, to turn to the court's first question, which what is new in this case, the only thing that's really new in this case is this court's decision in the Ventura Mobile Home Communities Association case. In that case, the court actually reached the merits of the failure to substantially advance claim and ruled that the ordinance that's being challenged in this case does substantially advance legitimate government purposes of protecting residents from unreasonable rent increases and protecting their investments in their homes, neither of which purposes have anything to do with the future affordability of these homes, and neither of these purposes are vitiated by the claimed creation of a premium. So I think the park owner in this case has something more problematic in that it appears, and we argue in our brief that the, not in our brief, but I think in a letter brief to the court when that decision came down, that because this park owner was either a member of that association or obviously in privity with it, that we have a problem, yes, a problem of claim preclusion on the failure to substantially advance the United Circuits law and ruled against them on the merits of that claim, which would leave them with only a fair return-taking claim, and I don't think anyone disputes that that's an as-applied claim seeking compensation, which is unright. I want to talk further about this question of whether what's being alleged in the complaint is a facial as opposed to an as-applied claim. Prior to the Hacienda Valley decision, the Ninth Circuit had consistently construed premium-based failure to substantially advance claims as being necessarily facial. We had the Laval decision, we had the Richardson decision, we had the Carson Harbor decision. Hacienda did make the statement that such a claim could be alleged as an as-applied claim. Now, for a number of reasons argued in our brief, and I think also argued in the companion brief in the next case, we think the Hacienda panel got it wrong. The allegations in Hacienda were identical to the allegations in Laval, which the Laval court say did not state an as-applied claim, and the Hacienda Valley panel really relied on footnote three of Laval. Footnote three of Laval said, well, you haven't made an as-applied fair return claim. We hold open the possibility that you could have made such a claim on an as-applied basis. The Hacienda Valley panel misread that as saying you could state an as-applied premium-based failure to substantially advance claim. Putting that aside, I think it's problematic. I mean, whether this court is either bound by Laval or bound by Hacienda Valley, which I think are clearly at odds with each other, the allegations in the complaint in this case, which adds to the premium, are contained at paragraphs 23 and 24. That's at pages seven and eight of the excerpts of record at the end of the complaint. If you read the allegations of a premium, the complaint simply exists that homes are selling for a premium a price above their Blue Book or Kelley Blue Book value. It doesn't expressly allege that this creation of a premium was caused by any particular application of the ordinance, significantly the application of the ordinance that's at issue in this case. The only connection that the allegations make with the premium and the ordinance is it alleges that this premium creation was, the application was made pursuant to the Richardson case. Well, if you go to the Richardson case and read it, the Richardson case involved an allegation that a gas station rent control ordinance created a premium on the sale of gasoline prices. And so the ordinance wouldn't solve its, or resolve or meet its purpose of ameliorating gasoline prices. The Richardson case clearly indicated that that's a facial claim. In other words, that premium arises from the very adoption of the ordinance. It's not an as-applied claim. So the only allegations in the complaint, even its most wide or broad construction, it's making a claim under Richardson. It's making a facial claim. Now, counsel asked, well, on the statute of limitations issue, this ordinance was enacted in 1981. How about delayed discovery? Well, there's no allegation in the complaint of delayed discovery. And unlike in Travis, these ordinances are applied to the park owner immediately. Within the first year, they're subject to restrictions on every year. If they want a rent increase, the rent increase is, they have a permissive rent increase. If they want more, they have to make applications. So this isn't, you know, you discover some years down the road that you're being damaged. You're not being damaged by the premium. That's the increase in value of the resident's homes that you claim is caused by the land use restriction. Your damage is not being able to collect the amount of rent that you want to collect. And that happens immediately within the first year of the enactment of the ordinance. All the cases in the Ninth Circuit say that when you have a facial-taking claim, it accrues at the time of the ordinance's adoption. Travis doesn't change that. Nothing in Travis suggests that should be changed. It's a little strange. When the ordinance is adopted, there's no premium in the market at that point. It evolves over time. The theory that was adopted in Richardson was that, and it's a tough claim to make. You have to say that you read the face of the ordinance, and it's clear that no matter how the ordinance is applied, it cannot achieve its purpose. And the theory of Richardson was it only had one purpose, apparently, ameliorating gas prices. Originally, the result on summary judgment came back and there was a trial. But again, the theory is that you can look at the face of the ordinance, in some cases, and determine that there's no way it can advance a legitimate government purpose. And therefore, it's invalid. That's a pretty tough claim to make, isn't it, within the first year that an ordinance has gone into effect. Sometimes markets may not value things. You may not figure out that there's a premium that's going to be captured by the homeowner rather than by the owner of the property. That's correct, Your Honor. But then again, you have to look at the difference in remedy. In a facial challenge, what you're looking at is to invalidate an ordinance that's never going to work. If there's a possibility that an ordinance can work, you defer it to the legislature. You defer it to the legislation. And then you deal with the instances where it doesn't work on an as-applied basis. The problem, as I understand it, is that if you can never bring the – if for practical reasons you can never bring an as-applied problem. I mean, the ordinance is there. It's more than a year old. Nobody can ever challenge it on its face. And we don't require that in any other context. For example, a First Amendment context, we wouldn't think of saying, gee, it's too late. The statute's been around for a year. Well, again, it's not the creation of the premium that harms the park owner. It's the application of the ordinance to his property. And that happens immediately upon its enactment. There's also the Carson Harbor case to say if you buy a park ten years after rent controls enacted, you don't have standing to challenge the ordinance because the taking occurred upon enactment with respect to the prior park owner. Plus, you probably paid less for the park knowing it's under rent control. But again, the difference is it's not the premium that causes you harm. If the ordinance doesn't serve any possible legitimate government purpose, you're harmed from day one after its enactment because you can't raise rents except in accordance with the ordinance. And this ordinance says that when someone sells their home, you can't raise rents either. You have to raise rents in accordance with the restrictions of the ordinance. So the premium's not the harm. It's the restriction on your ability to raise rents. So the theory of the facial claim is that your ability to use your property and raise rents without hindrance by the government is being taken by an ordinance that doesn't serve any good purpose. Now, that still leaves you with an economy. Well, it may serve a good purpose. But part of the theory of the takings clause is if we're going to take property for public use, then the use that goes to the public ought to be shared by the public and not borne on the backs of an individual property owner. Well, I think, Your Honor, that's more of an equal protection claim. In other words, if the city, if you look at the findings of this ordinance, it finds that rents are, because of the unique position of mobile home park owners within the city, shortage of vacancies, power over the residents, inability to move the homes, that they are able to charge rents far above what they could charge in a competitive market. Unlike an apartment situation where an apartment dweller, if he doesn't like the rent level, assuming other housing is available, he's got his personal possessions, he can move out. If you're a mobile home owner, you can't move your home. If the rents are raised high enough, maybe you can't sell your home. Or if the park owner, if I raise the rents way above what a competitive rent would be, he has sucked all the equity out of your home, so you just walk away from it. So the city has made findings, and that's why they have decided that this is a particular form of rental housing that needs to be regulated. And so I think that's really more of an equal protection issue than it is a takings issue. As long as the park owner gets a fair return, there's no taking. Thank you. Now are you suggesting there's, I didn't quite understand, on the as applied in the premium situation where the premium manifests itself? That's correct, Your Honor. I think that if you read Laval, in fact the allegation was that the premium wasn't created upon adoption of the ordinance, but it appeared years later when property values arose in the city of Palm Desert. And the Laval panel said, no, that's not an as applied taking. It's still a facial claim. It's still time barred. I think the Hacienda panel clearly misread that and reached an exactly opposite result. I think also is that the nature of an as applied claim is that the premium arises from a particularized application of the ordinance. If the court thinks about it, what happened here is the park owner was denied a rent increase. The denial of that rent increase doesn't create a premium. Premiums only occur when a home is sold from time to time at what the park owner alleges is a price above blue book. What is the application of the ordinance at the time then the premium occurs from time to time? It's going to be the inability to raise rent to a so-called market level upon resale. It's a function of the vacancy control aspect of the ordinance. Theoretically, you could say that when a home is sold in the park, you could apply to have the rent increased on that space to the new buyer to a level that would create no premium. And you could argue that that's some sort of as applied premium based claim. That's not what's argued here. That's not what's alleged here. I think the allegations in the complaint are clearly consistent with a facial claim. And the only legal authority they cite is Richardson, which was a facial claim. I really think the Hacienda court got it wrong and can't up the E squared with the Laval decision. And I think it misread footnote three in Laval. And the California courts likewise have said consistently that facial, well, premium based claims are facial claims. Finally, even if there were an as applied premium based claim here, which I don't think there is alleged, the Hacienda case said that that was unright and sent it back to state court. That was Hacienda. It says it's unright. So even if you constrained a fine or if they could have amended and they're not complaining on this appeal, they couldn't amend, it's a stated as applied premium based claim. Hacienda also said that that's unright. And as far as the Kavanaugh adjustment not being adequate. It becomes mooted out because it's essentially striking the ordinance as applied. So it's not a question of compensation. What's your response to that? Well, I think that's a clever argument. But I think the answer to that is that what you are actually asking for is a $300, I think,  I think the invalidation remedy, I think you invalidate a portion or all of an ordinance because it doesn't serve a particular public purpose or any public purpose. What the park owners here are seeking is essentially compensation. They want to go back and get an additional $300 a month to remedy the premium. That's money in the park owner's pocket. They're not invalidating any part of the ordinance. They're seeking money. And their complaint expressly seeks damages. And as far as the Kavanaugh adjustment, just the criticism, any criticism, I think Judge O'Scanlan had criticism and a concurring opinion on the Kavanaugh adjustment. At 16 Cal 4, 780, that's in Kavanaugh where they create this Kavanaugh adjustment. They take that adjustment from a Ninth Circuit case, actually. Mountain Water and Power versus Montana Department of Public Services. That's 919 F2-593-601. That's a 1998 Ninth Circuit case. That was a rate-making case before the Ninth Circuit. And the Ninth Circuit says, well, when you get a rate that doesn't give you a fair return, what you do is you send it back to increase future rates to make you whole. So the Kavanaugh adjustment isn't some crazy remedy dreamed up by the California Supreme Court. They actually look to Ninth Circuit rate-making law to borrow that remedy. So the suggestion that they have a more effective remedy on that issue than they do here, than they do in California, I think is incorrect. Thank you. So I guess the city is conceding that if hacienda is the law in this circuit, which it is, then we have satisfied that particular prong. In other words, the potential for an as-applied challenge. Here we have a case where we have gone to the administrative agency, and we said to the administrative agency, there's only one way to avoid the creation of the premium under your ordinance, and that is for you to provide us with a rent increase sufficient to ensure that no premium will be created when Mrs. Smith, an existing resident, sells to Mr. Jones. The first time we knew that the city would not adopt our, would not give us a rent increase sufficient to ensure that there was no premium, was when the city followed the recommendations of its experts in finding that it is, quote, not a legally cognizable theory, close quote. Now these were its experts. I guess the city thought. So what would the effect of that be? Would it drive the tenants out? Absolutely not. Why not? Because the residents. How can you say that someone's living on Social Security in a trailer, in a very tight budget, and the rent's increased $300 a month? Well, one answer I suppose to that is, to Judge Bivey's comment about why are we foisting the obligation to care for those on welfare exclusively on the backs of this particular property owner? Why aren't we causing the government as a whole to share that burden? But the fact of the matter is that all of these parks. Well, the value of the land's gone up. Absolutely it's gone up. It's gone up dramatically probably over the years. That's one of the reasons why there's this premium, because the property owner's property has increased in value. It's the property owner's property that's increased in value, though. It's not the mobile home. The mobile home is a piece of depreciating personal property. It doesn't increase in value. It doesn't have any interest in the land, except that, I suppose, which has been caught. They're usually just month-to-month tenants, are they? Absolutely. You can offer a long-term lease under California law, and under certain circumstances that can be exempt from rent control. But under California law, these residents are month-to-month tenants. They are subject to just cause eviction. They can only be removed if they violate the rules or if they don't pay their rent. Otherwise, they're there for life. So if you increase the rent without any limitation or any control over it. Perhaps I should have ---- If you do that, then you drive all the people out. Well, not unless there's an unconstitutional premium. The only instance in which there might even be that concern would be where the ordinance has created an unconstitutional premium. So by definition, what you're saying then is that the existing property owner should have to bear the burden of unconstitutionally being forced to subsidize these residents. Isn't that true of all rent control ordinances? No, not a bit. It's exclusively true. It's exclusively true in circumstances where you have mobile home park rent control with what is called vacancy control, i.e., the inability to raise rents on what we call turnover. Perhaps this should have been a Brandeis brief because I represent hundreds of park owners all over this state, and the majority of them in rent control jurisdictions, the vast majority, have rent deferral programs and all kinds of other programs that are designed to prevent any undue hardship on residents. Rent deferral program. Just what I said. If a rent increase for some reason is an unbearable burden on an existing resident, then park owners will defer all or a portion of the rent increase until that resident either dies or moves from the mobile home park and sells their home.  I guess. Right. Is the vacancy control provision, is that a standard provision in cities regulating mobile homes? It is illegal in California to have a local rent control law that has vacancy control except in mobile home parks. In other words, the lobbying groups were successful in getting the state of California to acknowledge that it is completely unfair to allow an apartment house tenant to basically sell the apartment, the right to the apartment, to another apartment house tenant. They call them key fees. It's a crime in New York City to do such a thing. And yet here in California we have it institutionalized because a resident, under the guise of selling their mobile home, in fact, sells nothing more than the landowner's land, sells the leasehold, the leasehold premium, does nothing more than that, and yet that's authorized under California law. Has that provision ever been challenged? The vacancy control? Absolutely. And California courts have upheld it? Absolutely. And a whole variety of courts have upheld it. In fact, you have a case out of Montclair, Montclair mobile home park owners, in which they expressly said, we reject. This is a mobile home park rent control case. And they said, we specifically reject the Richardson type of analysis, which would say that a vacancy control provision would be unconstitutional because it would create unconstitutional taking. Mr. Heeter made mention of the merits of this action, inviting you to reach the merits of the Ventura case, i.e., whether or not the premium is created, whether or not it does, in fact, substantially advance a legitimate governmental purpose. First, if you stop and think about it, when Mr. Heeter tells us that protection of equity is the goal of the ordinance, we specifically allege that it doesn't advance any legitimate governmental purpose at all. So what is your remedy here? I'm still unclear. We want the ordinance invalidated. And? We want the ordinance invalidated. We also have a separate, we have a separate and distinct claim for just compensation and for damages as a result of having this unconstitutional ordinance imposed on us. But that's completely separate and for another day. Today, the principal relief that we're seeking is invalidation of the ordinance. Because the ordinance. Invalid as to whom? As to the city. So you're taking your as-applied challenge and invalidating the ordinance for all, as applied to all? As applied to our. Everybody who's subject to it. As applied to our community. And I guess now that we know if the city wants to concede it's going to be applied the same way to every community, then it would be declared unconstitutional as to all. In other words, it's the failure of this ordinance to provide a mechanism designed to prevent the creation of a premium. Remember, that is clearly the law under Richardson. It's the failure of the ordinance to provide a mechanism to create the prevention of a premium. And we sought that mechanism through this administrative process, which we are authorized to do. We thought that the city would follow the law and would take the opportunity presented to itself to avoid the, to provide administratively the mechanism that prevented the premium. But there's no, if you have a mobile home and you go into a trailer park, did you say earlier that you cannot enter into a long-term lease? No, I said you can. No tenant in an existing rent-controlled mobile home park, typically they will not enter into long-term leases. And the reason is because they'd much rather have the subsidies provided under the rent-control law and a mobile home park owner is prohibited from imposing such a lease on an existing resident. So someone came, someone had come in there 10 years ago and said, well, I want a 20-year lease. If a prospective resident comes into the park and says, I want a 20-year lease, absolutely. A community owner can give them a 20-year lease. But they're not going to do it. Why in the world, a park owner would do that. Why in the world would a prospective resident sign such a thing? Remember, in the city of Ventura, they come in and they get the benefit of the incumbent tenant's rent. The incumbent. Even before you had rent control. You mean 20 years ago or 25 years ago? Yeah. Okay, and you're saying that someone comes in before rent control and says they want a long-term lease. Yeah. And there are many parks that have long-term leases in effect as a result of that. That just makes our point, though, I think, that what they've done by virtue of the statute is they've created a leasehold interest at below-market rents and then a perpetual leasehold. Most of the people that are living in these trailer parks, are they people that are pensioneers or people that are low-income? Many of them are second-homers in many of these communities. For example, down in the desert, down in the Coachella Valley, that area. Yeah, I know they go down and play golf. Most of the residents from there, many of the residents live in Canada. They don't even live here. And yet they get the benefit of rent control, and when they go to sell their mobile home, they sell their mobile home for ten times what you could buy it for on any dealer's lot. That's just wrong, and it's unfair. Well, what about the mobile home owner that's a pensioner that's living on limited income, or someone who's a working person? Number one, we have rent-deferral programs. I don't care about that. Number two, we have Section 8. Rent-deferral programs, that's another subject for another day. Number two, there's Section 8. There's federal programs. There's state programs. I can't get Section 8 anymore. Well, many places you can. Some you can't. Well, it's almost impossible. Right? Yeah. So what else is there? Grants and loans at the local level. The state of California has grant programs and loan programs. Many local jurisdictions through the redevelopment. Can they grant money to people living in the area? Absolutely. Absolutely. Many local jurisdictions have available funds from their redevelopment agencies. Yeah, but those are limited. They are limited because the resources of the public at large, of the government, of the Treasury, is limited. So what does that mean? Does that mean we should unconstitutionally take from property owners and require them to do the subsidies? We have another case. Maybe we should shift gears. Okay. Well, I noticed it said stop some time ago. So I'm going to. Well, I'm sitting too low in the chair. Should we go? You want to. Okay. Should we take a break or. No. Okay. So now we're starting on.
judges: Pregerson, Fisher, Bybee